IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN MONCAVAGE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OMNOVA NORTH AMERICA INC., and OMNOVA SOLUTIONS INC.,<br><br>Defendants. | Civil Action No. _____ |

**DEFENDANTS' NOTICE OF REMOVAL**

Defendants Omnova North America, Inc., now known as Surteco North America, Inc. ("Surteco"), and Omnova Solutions, Inc., now known as Synthomer Inc. ("Synthomer") (together, "Defendants"), by and through their respective undersigned counsel, hereby give notice, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, of the removal of the above-captioned action from the Court of Common Pleas, Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania. As grounds for removal, Defendants state as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

1.    Plaintiff Kevin Moncavage ("Moncavage") instituted this action in the Court of Common Pleas of Philadelphia County, Pennsylvania, on or about December 23, 2024, under the caption *Kevin Moncavage v. Omnova North America Inc. and Omnova Solutions, Inc.*, Case No. 24120283 (the "State Court Action").

2.    Surteco first received notice of the State Court Action on January 14, 2025, when its registered agent was served with a copy of the Complaint.

3. Synthomer first received notice of the State Court Action on January 16, 2025, when its registered agent was served with a copy of the Complaint. A true and correct copy of all process, pleadings, and orders served upon Defendants in the State Court Action is attached as **Exhibit A**.

4. Plaintiff's Complaint was the first pleading filed by Plaintiff and received by Defendants that set forth the claims for relief upon which Plaintiff brings this action against Defendants.

5. This Notice of Removal has been timely filed within thirty days of Defendants' receipt of the Complaint. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining that the thirty-day period for removal runs from the service of the summons and complaint).

6. In the Complaint, Plaintiff claims that Defendants violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101 to .115, by failing to pay for time associated with engaging in the "pass down" process to transfer work from the outgoing shift to the incoming shift, as well as for walking time within a manufacturing facility operated by Defendants in Auburn, Pennsylvania (the "Auburn Facility"). *See* Compl. ¶¶ 12-13.

7. Surteco timely filed preliminary objections to the Complaint on February 4, 2025.

8. Synthomer has not yet responded to the Complaint.

## II. THE COURT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

9. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

10. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2).

11. CAFA provides for federal subject-matter jurisdiction over class actions in which: (1) any member of a class of plaintiffs is a citizen of a State different from any defendant; (2) the aggregate number of putative class members is at least 100; and (3) the amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5).

12. All requirements for jurisdiction under CAFA are satisfied in this case based on Plaintiff's allegations and prayer for relief, and no exception to the exercise of federal jurisdiction applies. Therefore, removal of the State Court Action is proper.

### A. Diversity of Citizenship Exists.

13. To satisfy CAFA's diversity requirement, a party seeking removal must establish only that minimal diversity exists—*i.e.*, that one putative class member is a citizen of a state different from any defendant. *See* 28 U.S.C. § 1332(d)(2).

#### i. *Plaintiff is a citizen of Pennsylvania.*

14. For diversity purposes, a person is a "citizen" of the state in which he is domiciled, and residence alone is enough to establish a presumption of domicile. *See Anthony v. Small Tube Mfg. Corp.,* 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (citizenship and domicile are equivalent for diversity purposes); *Capato v. Astrue*, No. 08-5405, 2010 WL 1076522, at *6 (D.N.J. Mar. 23, 2010) (residency establishes a presumption of domicile) (citing *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941)).

15. As set forth in the Complaint, Plaintiff is an adult individual currently residing at Ashland, Pennsylvania (Schuylkill County). Compl. ¶ 3. Thus, he should be construed to be a citizen of the Commonwealth of Pennsylvania.

    ii. *Defendants are not citizens of Pennsylvania.*

16. Surteco is incorporated in Delaware and has its principal place of business in Myrtle Beach, South Carolina. Pursuant to 28 U.S.C. § 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Cleary v. Avature, Inc.*, 560 F. Supp. 3d 851, 853 (E.D. Pa. 2021).

17. Therefore, for the purposes of jurisdiction under CAFA, Surteco is a citizen of Delaware and South Carolina and holds citizenship diverse from that of Plaintiff. 28 U.S.C. § 1332(d)(10).

18. Synthomer is incorporated under the laws of Ohio, with its principal place of business in Beachwood, Ohio.

19. Therefore, for the purposes of jurisdiction under CAFA, Omnova Solutions, Inc. (Synthomer) is a citizen of Ohio and holds citizenship diverse from that of Plaintiff. 28 U.S.C. § 1332(d)(10); *Cleary*, 560 F. Supp. 3d at 853.

    iii. *Minimal Diversity Exists.*

20. Accordingly, because minimal diversity only requires that one putative class member is a citizen of a state different from any defendants, Plaintiff is a citizen of Pennsylvania, and Defendants are not, minimal diversity has been met for the purposes of federal jurisdiction under CAFA.

**B. The Putative Class Has More Than 100 Members.**

21. Removal under CAFA is appropriate where there are at least 100 members of all proposed classes in the aggregate. 28 U.S.C. § 1332(d)(5)(B).

22. Based on Plaintiff's definition of the putative class, which includes "all individuals employed by Defendant at the Auburn Facility and paid an hourly wage during any time since

December 23, 2021[,]" Compl. ¶ 14 (the "Putative Class"), and as confirmed by a review of Defendants' business records, there are well in excess of 100 employees that fall within the scope of the Putative Class.

23.     Accordingly, the second jurisdictional requirement under CAFA is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

### C. The Amount In Controversy Exceeds CAFA's Requirements

24.     Although Defendants deny Plaintiff's factual allegations that Plaintiff or the Putative Class are entitled to the relief requested, or that a class properly could be certified, Plaintiff's allegations and prayer for relief put into controversy an amount that plausibly exceeds the $5,000,000 threshold for CAFA jurisdiction.

25.     Plaintiff's Complaint does not state the monetary amount he seeks in damages.

26.     Where a plaintiff does not expressly plead a specific damage amount, as in the present case, a notice of removal under CAFA "need not contain evidentiary submissions," but merely a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014); *see also Frederico v. Home Depot*, 507 F.3d 1888, 197 (3d Cir. 2007) (holding that where a plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum, the case is to be remanded only if it "appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount"); 28 U.S.C. § 1446(a) (requiring only a "short and plain statement of the grounds for removal").

27.     Defendants' burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 88. "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value

of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109-14, at 42 (2005) (citation omitted). This statement is consistent with the Third Circuit historically applying a "liberal" standard when determining if the amount in controversy is satisfied for purposes of diversity jurisdiction. *See, e.g.*, *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 (3d Cir. 2003).

28. In the Complaint, Plaintiff seeks the following types of relief, among others: "(i) unpaid overtime wages; (ii) prejudgment interest; (iii) litigation costs, expenses, and attorney's fees;[] and (iv) any other relief this Court deems just and proper." *See* Compl. Prayer for Relief.

29. Specifically, for the period in which Synthomer employed individuals at the Auburn Facility, Synthomer estimates that its employees who are encompassed in Plaintiff's definition of the Putative Class worked a total of approximately 12,400 workweeks[1] at an average hourly overtime pay rate[2] of $39.06 during the relevant time period.

30. For the period in which Surteco employed individuals at the Auburn Facility, Surteco estimates that its respective employees who are encompassed in Plaintiff's definition of

---

[1] To estimate the number of workweeks for the Putative Class, Synthomer relied on the weekly payroll data for the defined Putative Class between December 23, 2021, and February 28, 2023.

[2] To estimate the average rate of pay for the Putative Class, Synthomer reviewed the regular rates of pay for the defined Putative Class between December 23, 2021, and February 28, 2023. Based on that regular rate of pay average, which equated to $26.04, an average overtime premium rate was calculated by multiplying the average regular rate by 1.5, which produced an average overtime rate of $39.06.

the Putative Class worked a total of approximately 14,155 workweeks[3] at an average hourly overtime pay rate[4] of $42.36 during the relevant period.

### i. *Total Unpaid Wages in Controversy*

31. Plaintiff seeks to recover purportedly unpaid overtime wages, for the alleged failure to pay Plaintiff and other Putative Class members for time associated with engaging in the "pass down" process and walking time within the Auburn Facility. *See* Compl. ¶¶ 12-13.

32. Plaintiff's Complaint does not state the specific amount of time for which he believes he was not compensated in accordance with the PMWA. *See generally id.*

33. Additionally, Plaintiff also avers that he, "and other class members have not received any overtime wages for time associated with such activities during weeks in which they work[ed] over 40 hours." *Id.* ¶ 13.

34. Accordingly, a reasonable reading of Plaintiff's Complaint would include an assumption that Plaintiff believes purported uncompensated time would be overtime hours worked. *See generally id.* ¶¶ 27-28.

35. Based on a reasonable reading of Plaintiff's factual averments, the Complaint could be reasonably read to allege uncompensated time of 40-50 minutes per shift.[5] Assuming 40-50

---

[3] To estimate the number of workweeks for the Putative Class, Surteco relied on the weekly payroll data for the defined Putative Class between February 28, 2023, and December 23, 2024.

[4] To estimate the average rate of pay for the Putative Class, Surteco reviewed the regular rates of pay for the defined Putative Class between February 28, 2023, and December 23, 2024, and an average of those pay rates was taken. Based on the average rate of pay, which equated to $28.24, an average overtime premium rate was calculated by multiplying the average regular rate by 1.5 which produced an average overtime rate of $42.36.

[5] The reasonable reading of Plaintiff's Complaint and averments contained therein is not to be construed as a concession as to the amount of time in which these alleged activities took place. Defendants deny all allegations in the Complaint.

minutes per shift of alleged uncompensated time, and assuming five shifts[6] worked per workweek, (*i.e.*, 200-250 minutes per workweek), along with an award of attorneys' fees as set forth in the next subsection, would result in satisfaction of the amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

36.     When considering the average rates of pay and number of workweeks during the relevant time period for the individuals subsumed in Plaintiff's defined Putative Class, the alleged unpaid wages sought by Plaintiff easily exceeds the sum or value of $4,000,000. In other words, for both respective Defendants, when multiplying the estimated average hourly overtime rates ($39.06 and $42.36) by a plausible estimate of minutes[7] of purported unpaid work per workweek (200-250 minutes, all of which is assumed to be overtime pay) by the estimated number of workweeks (12,400 and 14,155), the alleged unpaid wages sought by Plaintiff exceed $4,000,000. After accounting for an award of attorneys' fees as set forth in the next subsection, the requirements of 28 U.S.C. § 1332(d)(2)(A) are satisfied.

### ii.     Total Litigation Costs, Expenses, and Attorneys' Fees

37.     In addition to the alleged unpaid wages sought by Plaintiff, he also seeks the recovery of attorneys' fees. *See* Compl. Prayer for Relief.

38.     In assessing whether the amount in controversy is met, the Court should also consider any such award of attorneys' fees, which is likely to be approximately 30% of the total judgment. *See, e.g.*, *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019) (noting that

---

[6] Based on a review of Plaintiff's time records, he often worked five shifts per workweek. As Plaintiff seeks to be his putative class's representative, for purposes of removal, Defendants assume the putative class members worked five shifts per week.

[7] As outlined above, this estimate is based on a reasonable reading of the Complaint and Plaintiff's averments. Defendants do not concede the amount of time required to undertake any activities outlined in Plaintiff's Complaint and deny all allegations of wrongdoing.

attorneys' fees "count for CAFA's amount-in-controversy threshold"); *see also Lohr v. United Fin. Cas. Co.*, No. 09-752, 2009 WL 2634204, at *6, n.3 (W.D. Pa. Aug. 25, 2009) (recognizing that attorneys' fees may be included in calculations for amount in controversy under CAFA and that median range for attorneys' fees in class actions is 27% to 30%); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (noting that "[f]ees could be as much as thirty percent of the judgment" in a class action).

39. Indeed, complex wage-and-hour cases such as this matter can result in the award of attorneys' fees well in excess of $100,000 per pro-rated plaintiff and potentially in the millions *in toto*. *See Mozingo v. Oil States Energy Servs., L.L.C.*, No. 15-529, 2018 U.S. Dist. LEXIS 158780, at *39 (W.D. Pa. Sep. 18, 2018) (awarding $2,263,904.50 in attorney's fees related to the successful trial claims of 8 plaintiffs, which pro-rated per plaintiff amounts to $282,988.06); *LaRue v. Great Arrow Builders LLC*, 2022 Pa. Dist. & Cnty. Dec. LEXIS 3, *2 (Pa. Ct. Com. Pl 2022) (awarding approximately $12.7M in attorney's fees (in part to Winebrake & Santillo, Plaintiff's counsel in this matter)).

40. Between the alleged unpaid wages, as well as attorneys' fees, the amount in controversy for removal purposes only is in excess of the $5,000,000 CAFA threshold.

**III. NO EXCEPTION TO CAFA APPLIES BECAUSE DEFENDANTS ARE DIVERSE**

41. CAFA provides for two primary exceptions to the exercise of federal jurisdiction: the "home-state" and "local controversy" exceptions. *See* 28 U.S.C. § 1332(d)(4)(A) & s(B).

42. The "home-state" exception may apply where, *inter alia*, the primary defendants are citizens of the state in which the class action was originally filed. *See* 28 U.S.C. § 1332(d)(4).

43. The "local controversy" exception applies where, *inter alia*, at least one defendant is a defendant: (i) from whom significant relief is sought by members of the plaintiff class; (ii)

whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and (iii) who is a citizen of the state in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(A)(i).

44.   Here, as noted above, neither Defendant is a citizen of the Commonwealth of Pennsylvania. Thus, neither the "home state" nor the "local controversy" exception to CAFA removal apply in this case.

## IV.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

45.   By reason of the foregoing and pursuant to 28 U.S.C. § 1441(b) and (c), Defendants desire and are entitled to have this case removed from the Court of Common Pleas of Philadelphia County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania.

46.   This Court is the appropriate venue for removal because the State Court Action is pending in the Court of Common Pleas, Philadelphia County, Pennsylvania, and the United States District Court for the Eastern District of Pennsylvania is the "district embracing the place where such action is pending." 28 U.S.C. § 1441(a); 28 U.S.C. § 118.

47.   In compliance with 28 U.S.C. § 1446(a), "a copy of all process, pleadings, and orders served upon" Defendants is attached hereto.  *See* Ex. A.

48.   A copy of the docket maintained for this matter in the Court of Common Pleas for Philadelphia County, Pennsylvania, is attached hereto as **Exhibit B**.

49.   In accordance with 28 U.S.C. § 1446(d), Defendants will promptly file a copy of this Notice of Removal with the Court of Common Pleas, Philadelphia County and provide written notice of this filing of this Notice of Removal to Plaintiff's counsel of record.

## V.     DEFENDANTS' RESERVATION OF RIGHTS AND DEFENSES

50.     By filing this Notice of Removal, Defendants do not waive any available rights or defenses that may be available to them. In addition, nothing contained in this Notice of Removal is to be interpreted as a concession of the amount of time at issue with respect to any of the Putative Class members' alleged pre-shift and post-shift activities.

**WHEREFORE**, Defendants respectfully request that the United States District Court for the Eastern District of Pennsylvania accept the removal of this action from the Court of Common Pleas of Philadelphia County, Pennsylvania, and direct that the Court of Common Pleas have no further jurisdiction over this matter unless and until this case is remanded.

Respectfully submitted,

**JACKSON LEWIS P.C.**

Dated: February 13, 2025    By:    */s/ Daniel F. Thornton*
Daniel F. Thornton (PA No. 318431)
daniel.thornton@jacksonlewis.com
Jasmine Williams (PA No. 324520)
jasmine.williams@jacksonlewis.com
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
267-319-7802

*Counsel for Omnova Solutions, Inc. n/k/a Synthomer, Inc.*

Andrew N. Howe
Attorney ID No. 56337
**DINSMORE & SHOHL, LLP**
100 Berwyn Park
850 Cassatt Road, Suite 110
Berwyn, PA 19312
andrew.howe@dinsmore.com
Tel: 610-408-6034

*Counsel for Omnova North America, Inc. n/k/a Surteco North America, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 13, 2025, I caused a true and correct copy of the foregoing document to be served on the following counsel of record via electronic and overnight mail:

Peter Winebrake, Esquire
pwinebrake@winebrakelaw.com
R. Andrew Santillo, Esquire
asantillo@winebrakelaw.com
**WINEBRAKE & SANTILLO, LLC**
715 Twining Road, Suite 211
Dresher, PA 19025
Telephone: 215-884-2491

*Counsel for Kevin Moncavage*

                                          */s/ Daniel F. Thornton*
                                          Daniel F. Thornton